UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
UNITED STATES OF AMERICA,

   -v-                                   **S1 07 CR 907 (SAS)**

JOHN MELICHAREK,
      a/k/a "Rocky,"
MICHAEL IUNI,                      **NOTICE OF MOTION**
DOMINIC MEMOLI,
      a/k/a "Shakes,"
ANGELO NICOSIA,
LOUIS PIPOLO,
DARDIAN CELAJ,
      a/k/a "Danny,"
ENED GJELAJ,
      a/k/a "Neddy,"and
GJELOSH KRASNIQI,
      a/k/a "Jimmy",

**Defendants.**
-----------------------------------------------------X

PLEASE TAKE NOTICE that defendant MICHAEL IUNI ("Iuni") will, in accordance

with the schedule previously set by the Court, move this Court on February 15, 2008  for the

following relief Pursuant to Fed. R. Crim. P. 12(b):

I.  For an Order pursuant to Rule Fed. Rule Crim. Proc. 12(b)(3); Dunaway v.

New York, 442 U.S. 200 (1979) and United States v. Wade, 388 U.S. 218 (1967), suppressing

any testimony concerning the following identification procedures due to the fact that the

procedures  were so impermissible suggestive as to create the distinct possibility of an irreparably

mistaken out-of court identification, or in the alternative directing that a hearing be held as to the

admissibility of such identification procedures:

a. The identification allegedly made of IUNI following the viewing of

photographic array on March 2, 200 _?_ by CW # 1, an individual who is identified as the owner of a business located in Manhattan concerning the allegations of Extortion alleged to have occurred from 2004-February 2005 as charged in Count One and Two of the Indictment.

II.  For a severance, pursuant to pursuant to <u>Bruton v. United States</u>, 391 U.S. 123 (1968); <u>Cruz v. New York</u>, 481 U.S. 186 (1987); <u>Crawford v. Washington</u>, 541 U.S. 36 (2004); and Rule 14 of the Fed. R. Crim.. Proc. and the Confrontation Clause of the Fifth Amendment or in the alternative the entry of an Order precluding the government from introducing Fed. R. Crim. P. 14, and the Confrontation Clause of U.S. Constitution amendment VI, from any defendant against whom the government intends to introduce evidence of any statement or recording  inculpating IUNI or, in the alternative, for appropriate redaction of such statement(s) if possible, or for an order precluding the government from introducing evidence of any such statement or recording at IUNI's trial; in connection with this, IUNI requests that, pursuant to Fed. R. Crim. P. 14, the government deliver to the court for inspection, in camera or otherwise, any recordings, statements or confessions made by any defendant which the government intends to introduce at trial.

III.  Granting IUNI a severance of Counts I and II (Conspiracy to Commit Extortion and Hobbs Act Extortion from the remaining counts of the Indictment and granting IUNI a separate trial under said Counts on the grounds of misjoinder of defendants under Rule 8(b) of the Fed. R. Crim. Proc.

IV.  Defendant IUNI further moves pursuant to Rule 14 of the Fed. R. Crim. Proc. for relief from prejudicial joinder in the instant indictment by Ordering that Counts I and II (Conspiracy to Commit Extortion and Hobbs Act Extortion be severed from the remaining

counts and granting IUNI a separate trial under said Counts and by granting a severance and separate trial of this defendant from the other defendants charged the remaining counts.

V. Dismissing Counts I, II of the Indictment for the reason that each Count fails to state facts sufficient to constitute an offense against the laws of the United States and that this Court has no jurisdiction or venue over the facts alleged pursuant to the authority of the commerce clause of the Constitution of the United States and United States v. Lopez, 115 S. Ct. 1624 (1995).

VI. Pursuant to Fed. R. Crim. Proc. 12 striking from the caption of the Indictment various alias attributed to the defendants named therein and any and all surplusage contained in the Introductory portion of the Indictment (Paragraphs 1-2) .

VII. In accordance with Rule 404(b) of the Federal Rules of Evidence and the constitutional requirements espoused in *U.S. v. Baum*, 482 F.2d 1325 (2nd Cir. 1973); *U.S. v. Davidoff*, 845 F.2d 1151 (2nd Cir. 1988); *U.S. v. Brennan*, 798 F.2d 581 (2nd Cir. 1986); *Huddleston v. U. S.*, 485 U.S. 681 (1988); *U.S. v. Gilan*, 967 F.2d 772 (2nd Cir. 1992), for the purpose of asking the government to disclose to the defendant any and all acts which the government would seek to introduce against the defendant within two weeks of any scheduled trial date fixed by this court to facilitate the defendant reasonable time to may make a motion pursuant to Rules 403 and 404(b), to preclude introduction of such evidence.

VIII. In accordance with Fed. R. Crim. Pro. 16 and the constitutional requirements espoused in *Kyles v. Whitley*, __ U.S. __; 115 S.Ct. 1555 (1995), *U.S. v. Bagley*, 473 U.S. 667 (1985), *U.S. v. Agurs*, 427 U.S. 97 (1976), *Giglio v. U.S.*, 405 U.S. 150 (1972), *Brady v. Maryland*, 373 U.S. 83 (1963), and their progeny for the purpose of asking the government to

furnish or permit discovery, inspection and the right to copy the items specified in defendant's

Demand for Discovery, as more specifically set forth herein and in the request for discovery

previously made by the defendant Melicarek dated January 8, 2008.

IX.  Joining all relevant motions made by any and all co-defendants herein

X. For such further relief as the Court deems fair and appropriate.

In support of this motion, IUNI relies upon the annexed affidavits of Alan M.

Nelson, Esq., and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution

and Fed. R. Crim. P.  12(b)(3), 14 and 41(f) and 18 U.S.C.  2518 et sec.; the authority cited above,

and the contents of  the indictment.

Dated: Lake Success, New York
      January 30, 2008

                        ALAN NELSON (AMN-3891)
                        3000 Marcus Avenue, Ste 1E5
                        Lake Success, New York 11042
                        Tel.: (516) 328-6200
                        Fax:  (516) 328-6354

To:  Clerk of Court
    AUSA Elie Honig
    All defense counsel
    Courtesy copy to Judge Scheindlin

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------X
UNITED STATES OF AMERICA,

    -v-                                    S1 07 CR 907 (SAS)

JOHN MELICHAREK,
       a/k/a "Rocky,"
MICHAEL IUNI,                          AFFIRMATION AND ANNEXED
DOMINIC MEMOLI,                  MEMORANDUM OF LAW
       a/k/a "Shakes,"
ANGELO NICOSIA,
LOUIS PIPOLO,
DARDIAN CELAJ,
       a/k/a "Danny,"
ENED GJELAJ,
       a/k/a "Neddy,"and
GJELOSH KRASNIQI,
       a/k/a "Jimmy",

                       Defendants.
---------------------------------------------------X

        ALAN M. NELSON, ESQ., affirm and states:

        1. I am an attorney admitted to practice before this Court, and have been appointed, under the Criminal Justice Act, to represent MICHAEL IUNI (hereinafter the "defendant") in the above-captioned case.

        2. I make this affidavit in support of the defendant's motion for an order granting the relief set forth in the annexed Notice of Motion.

BACKGROUND

        3. On October 10, 2007 the defendant was arrested following the unsealing of the initial Indictment in this matter. Thereafter on January 9, 2008 Iuni was arraigned on the instant superceding Indictment. (See Exhibit "A" Superceding Indictment).

        4. The Indictment charges 8 defendants with participating in 5 separate and distinct

allegation of criminal conduct to wit:

i. *Hobbs Act Extortion*. Counts I and II charge the defendants MELICHAREK, IUNI AND NICOSIA with conspiracy to commit and the substantive offense of Hobbs Act extortion in violation of 18 U.S.C. 1951. It is alleged that the defendants "*from in or about 2004 up to and including February 2005*" extorted "the owner of a business located in Manhattan". (Indict Para 4-5).

ii. *Morris County, New Jersey Home Invasion Robbery*. Count III charges the defendants MELICHAREK, MEMOLI, CELAJ, GJELAJ and KRANIQI with a home invasion robbery in Morris County, New Jersey in *September 2003*. Count IV charges each of the defendants charged in Count III with possession of a a firearm in furtherance of that offense in violation of 18 U.S.C. 924(c).

iii. *Orange County, N.Y. Home Invasion Robbery I*. Count V charges the defendants MELICHAREK, MEMOLI, CELAJ, GJELAJ, KRANIQI and PIPOLO with a home invasion robbery in Orange County, New York alleged to have occurred in *October 2003*. Count VII charges each of the defendants charged in Count V with possession of a a firearm in furtherance of that offense in violation of 18 U.S.C. 924(c).

iv. *Orange County, N.Y. Home Invasion Robbery II*. Count VI charges the defendants MELICHAREK, MEMOLI, CELAJ, GJELAJ, KRANIQI and PIPOLO with a second home invasion robbery in Orange County, New York alleged to have occurred on *October 19, 2003*. Count VII likewise charges each of the defendants charged in Count VI with possession of a a firearm in furtherance of that offense in violation of 18 U.S.C. 924(c).

v. *Manhattan Robbery-Interstate Transportation of Stolen Property*. Count VIII charges MELICHAREK with a conspiracy to commit the robbery of the owner of a business in Manhattan in or about *October 2005*. Count IX charges MELICHAREK with the transportation of stolen property, to wit

2

: $17,000 in gold coins on or about October 27, 2005. It appears that this allegation is connected to Count VIII.

5. The defendant MICHAEL IUNI is charged solely with respect to the Hobbs Act Extortion as set forth in Counts I and II of the Indictment. His only common defendant with the remaining four separate and distinct allegations of criminal conduct is JOHN MELICHAREK, who is named in all nine counts of the Indictment.

6. Significantly Count I contains a three paragraph "Background" and "Defendants section. The three paragraphs allege in sum and substance that the defendants MELICHAREK, IUNI and NICOSIA were members of the Genovese Organized Crime Family. In addition Paragraph 4 alleges that the defendants "through their positions as members or associates in the Genovese Organized Crime Family.."conspired ... "to commit extortion... in violation of *18 U.S.C. 1951(b)(3)*.

7. A review of discovery provided by the government reveals that on or about March 3, 200 _?_ the victim of the extortion charged in Counts I and II viewed a photographic array containing six photographs and subsequently identified one of the photographs as that of the defendant IUNI. (See Exhibit "B" Copy of Photographic Array).

## I. SUPPRESSION OF IDENTIFICATION

8. A review of a photocopy of the array reveals that on its face the array was unnecessarily suggestive and quite capable of producing an irreparably mistaken identification due to the fact that the photograph of the defendant differs from that of the other five individuals in two material ways. First, IUNI is the only individual with a completely shaved head, all of the others, although having shortly cropped or balding heads are not completely shave. Second, the photograph of the defendant is noticeably older than the other five individuals. (See Exhibit "B"). Certainly the original must be viewed for an

appropriate determination on the issue. Moreover, it is unclear from the Exhibit in what year the photo graphic array was viewed. The Indictment alleges that the extortionate conduct occurred between 2004 and February 2005. Since the year of the identification is cut off in the copy provided by the government it is unknown whether this identification was made one month after the termination of the alleged conspiracy, i.e March 2005, one year, i.e March 2006, or two years, i.e March 2007 after the termination of the alleged conspiracy. Certainly the length of time between the victim's initial viewing of the offenders and his identification are crucial factors for consideration. It is submitted that in light of this threshold showing a question concerning the suggestibility of the manner in which the identification procedure was conducted requires an evidentiary hearing on the issue.

9. Where identify is an issue, as here the Due Process Clause enables the defendant to seek suppression on an identification procedure where the nature of the procedure creates the possibility of an irreparably mistaken identification. See Neil v. Biggers, 409 U.S. 188 (1972, U.S. v. Wade, 388 U.S. 218 (1969) and U.S. v. Crews, 445 U.S. 463 (1980).

10. It is respectfully submitted that the manner in which the identification procedures were conducted creates a material issue of suggestibility thereby requiring a hearing on the issues.

11. Accordingly it is requested that the identifications alleged to have been made of MICHAEL IUNI be suppressed or in the alternative that a hearing upon the suggestive nature of such procedure be held.

## II. SEVERANCE PURSUANT TO BRUTON v. UNITED STATES

12. Pursuant to Bruton v. United States, 391 U.S. 123 (1968) and Cruz v. New York, 481 U.S. 186 (1987), where a non-testifying co-defendant's confession incriminating the defendant is not directly admissible against the defendant, the Confrontation clause bars its admission at their joint trial

4

even if the jury is instructed not to consider it against the defendant.

13. The government has not informed counsel  that it intends to introduce any statements of any co-defendants that would be inculpatory of IUNI at trial.  If it does so intend, it should produce such statements in response to the this motion, so that the Court may fashion appropriate relief under Gray v. Maryland, 523 U.S. 185 (1998), Bruton v. United States, 391 U.S. 123 (1968), and Crawford v. Washington, 541 U.S. 36 (2004).  Such relief may include redacting the statements, if that is feasible, or forcing the government to elect between a severance and not introducing the statements on their direct case.

14. The government has however provided the defense with numerous recordings and transcripts of recordings made by a confidential informant.  The recordings were made between April 2004- late 2005.  A review of the recordings and transcripts makes clear that none are in furtherance of the conspiracy that the defendant IUNI is charged with in Count One.  Accordingly none of the co-defendants statements would be admissible pursuant to FRE 801(d)(2)(e) as co-conspirator statements.  However it does appear that some could relate to the surplusage allegations contained in Paragraphs 1-3 of the Indictment alleging that the defendant was a member of organized crime.

15. It is respectfully requested that to the extent that the government seeks at trial to introduce any recordings of co-defendants which the government will argue discuss, name or implicate IUNI that the government identify such recording; redact the portion(s) of such recordings that so implicate the defendant or in the alternative grant a severance pursuant to  Bruton v. United States, 391 U.S. 123 (1968), and Crawford v. Washington, 541 U.S. 36 (2004).

### III. MISJOINDER PURSUANT TO RULE 8(b)

16. MICHAEL IUNI requests that the Court sever Counts I and II from the remaining

5

counts of the indictment  pursuant to Rule 8(b) of the Fed. R. Crim. Proc.

17. Rule 8(b) of the Federal Rules of Criminal Procedure governs the joinder of

defendants. Fed. R. Crim. 8(b); <u>Zafiro</u> <u>v.</u> <u>United</u> <u>States</u> 113 S. Ct. 933, 937 (1993).

Rule 8(b) provides:

> Two or more defendants may be charged
> in the same indictment or information
> if they are alleged to have participated
> in the same act or transaction or in the
> same series of acts or transactions
> constituting an offense or offenses. Such
> defendants may be charged in one or more
> counts together or separately and all of the
> defendants need not be charged in each count.

18. In order for the defendants in each of the counts to be properly joined, it must be

alleged that they participated in the "same series of acts or transactions constituting an offense or

offenses." Fed. R. Crim. 8(b); <u>United</u> <u>States</u> <u>v.</u> <u>Welch</u>, 656 F.2d 1039, 1049 (5th Cir. 1981).

19. In examining the indictment before the Court, the issue, simply stated, is what

constitutes a series of acts or transactions.  In <u>United</u> <u>States</u> <u>v.</u> <u>Marionneaux</u>, 514 F.2d 1244 (5th Cir.

1975), cert. denied, 434 U.S. 903 (1977), the Fifth Circuit stated:

> Whether or not separate offenses are part
> of a "series of acts or transactions" under
> Rule 8(b) depend. . . on the relatedness of
> the facts underlying each offense. . ." When
> the facts underlying each offense are so
> closely connected that proof of such facts
> is necessary to establish each offense, joinder
> of the defendants and offenses is proper."
> <u>United</u> <u>States</u> <u>v.</u> <u>Gentile</u>, 495 F.2d 626, 630
> (5th Cir. 1974). When there is no substantial
> identity of facts or participants between the
> the offenses,  there is no series of acts under
> Rule 8(b). <u>Marionneaux</u>, at 1249.

28. It is well settled that joinder of otherwise separate acts may be allowed when the acts are properly linked by means of a conspiracy charge. United States v. Perez, 489 F.2d 51 (5th Cir. 1973).

29. The key to evaluating a conspiracy charge alleged in an indictment in the face of a motion pursuant to Fed. R. Crim. P. 8(b) is to ask, are the overt acts as alleged in the counts properly linked together, as a conspiracy. Therefore, a conspiracy, to be properly charged, is required to provide a common link and demonstrate the existence of a common plan for purposes of Rule 8(b). United States v. Bernstein, 533 F.2d 775 (2nd Cir. 1976).

30. In the case at hand, there are actually **five** distinct and separate criminal episodes in the Superseding Indictment.

31. While it is permissible so to charge, two or more conspiracies or criminal ventures may be joined under Rule 8(b) only if they are related as part of a common scheme. United States v. Persico, 621 F.Supp. 842 (S.D.N.Y. 1985). Part IV of the instant motion (below) addresses the basis for the severance and separate trial of these distinct conspiracies.

32. Pursuant to Rule 8(b) it is submitted that the indictment improperly joins the defendant MICHAEL IUNI with the co-defendants charged in counts other than I AND II.

33. IUNI, is alleged to have been involved solely in one offense, a conspiracy to extort a Manhattan business owner from in or about 2004 through February 2005. Those offenses are set forth in Counts I and II of the indictment. IUNI is not charged in with any of the remaining four criminal episodes.

34. Moreover there is no basis for the government to contend that the four other criminal episodes are part of a common scheme or plan as they relate to the extortion charged in Counts I and II. Counts III-VIII all relates to home invasion robberies alleged to have occurred in October 2003, more than

7

a year prior to conspiracy to commit extortion alleged to have occurred in late 2004-February 2005. Save the defendant MELICHAREK, who is named in all nine Counts of the Indictment there is are no common defendants between the extortion and home invasion robbery sets of episodes. Moreover, while each of the home invasion robberies are alleged to have been committed by assailants armed with firearms, there is no such allegation with respect to the extortion claim. Finally the extortion is alleged to have occurred in Manhattan the home invasion robberies in Morris County New Jersey and Orange County, New York respectively. In sum save, the mutual defendant MELICHAREK, there is no basis to assert there exist a common plan or scheme between the joined episodes.

35. A similar analysis applies with respect to Counts VIII and IX. It is alleged that the charged extortionate conduct occurred in October 2005 some eight months after the completion of extortion charged in Counts I and II. There is no similarity of defendants, victim or modus operandi.

36. While it is quite true that joinder is proper even if different defendants participate in different parts of an overall scheme or conspiracy for joinder to be appropriate the Government must first establish in the context of a conspiracy, that the defendant was a member of such conspiracy at the time of the alleged conduct attributed to him or that he adopted the prior acts of the co-conspirators at the time of his entry therein. Where the joined offenses are alleged to part of an overall scheme or similar pattern of conduct, for joinder to be proper the government must demonstrate a similarity of offenses as it relates to the specific defendant contesting the joinder to demonstrate that defendants role in or relationship to the offenses which are joined for which he is not charged.

37. In so doing the Court must apply an analysis similar to that employed when evaluating an application by the government to introduce evidence of uncharged crimes pursuant to Fed. R. Evid. 404(b). The Rule allows proof of other crimes, wrongs or acts to be admitted for purposes other than

showing of a propensity to act in a certain manner, such as "proof of motive, opportunity, intent ,

preparation, plan, knowledge, identity, or absence of mistake or accident." United States v. Pitre, 960

F.2d 1112, 1118 (2d Cir. 1992).

38. None of the government's proffered purposes for the joinder of the offenses for which

IUNI is not charged, to wit: to establish the relationship of the parties, provide background to the

conspiracies, or to bolster the credibility of their informants are probative of a material issue other than

an attempt to impermissibly prove criminal propensity on the part of the defendants.

39. The danger engendered by the court permitting evidence of these uncharged acts solely

through uncorroborated witness testimony clearly will create in the jury's mind the impermissible

inference of the defendant's propensity to commit the charged offense, in essence a theory of guilt by

association with his accomplices in the charged offenses.

40. The Government has failed to identify the existence of a common plan or agreement,

express or implied, on the part of IUNI to participate in the alleged offenses set forth in the remaining

counts of the indictment.

41. In summary, IUNI has been improperly joined as a matter of law with the co-

defendants, under all Counts excepting Counts I and II. Therefore, this Court, pursuant to Federal Rule

of Criminal Procedure 8(b) must sever the indictment and grant the defendant a separate trial upon those

overt acts under the indictment wherein he is properly charged.

### IV. MISJOINDER PURSUANT TO 8(a)

42. Rule 8(a) of the Federal Rules of Criminal Procedure provides that two or more

offenses may be charged in the same indictment if one or more of the following circumstances exist: one,

the crimes must be of the same or similar character, two, the crimes must be based on the same act or

transaction, or three, the crimes must be based on two or more transactions connected together or constituting parts of a common scheme or design. Fed. R. Crim. P. 8(a).

43.    Joinder is proper where there is a substantial similarity between the facts and participants among the Counts in the Indictment. United States v. Marionneaux, 514 F.2d 1244 (5th Cir. 1975). In a multi-defendant case for joinder of offenses, the defendant need not participate in every alleged count but each act must be part of a series of acts and the defendant must have participated in that series. United States v. Washington, 819 F.Supp. 358 (U.S.D.C. Vt. 1993).

44.    To constitute a "series," the acts must evince a substantial relationship. United States v. Pinkerton, 581 F.2d 193, 197 (9th Cir. 1978).

45.    As pointed out above Counts I and II cover one specific criminal episode, a extortion. Counts III-VI relates to three distinctly different episodes, three gunpoint home invasion robberies committed more than a year earlier with completely different participants a great distance away from the situs of the extortion. As such they are clearly not part of the, "same series of acts or transactions" essential for permissible joinder under Fed. R. Crim. P. 8(a) and 8(b).

46.    As previously analyzed and explained in Part III of this affidavit, there are essentially five separate criminal episodes charged in the Superseding Indictment  While it is not unusual so to charge, two or more episodes may be joined under Rule 8(a) only if they are related as part of a common scheme. Persico, supra.

47.    In the case at hand, however, the conspiracies are clearly not part of a common scheme, rather, their only link is the commonality of JOHN MELICHAREK. The Government, in joining all five episodes, improperly relies upon this one common defendant to create a nexus between the alleged criminal episodes where one fails to exist. This contention is fully supported by the fact that not only is

10

the government unable to establish a link between all the charged robberies, it does not charge a RICO

violation, 18 U.S.C. 1961, et. seq. or a n act of violence in furtherance of racketeering (18 U.S.C. 1959).

Rather the government inserts the surplusage language in Paragraphs 1-4 alleging that MELICHAREK,

IUNI and NICOSIA are members of organized crime, while charging a violation of 18 U.S.C. 1951, for

which such allegation is not an element.  Such evidence at trial accordingly is not an element of the

offense and should not be admissible under FRE 403 analysis.

48.  Addressing a similar such a situation, the Marionneaux, *supra,* Court stated, "When,

as  here, the connection between different groups is limited to a few individuals common to each but

whose individuals commit separate acts with no common aim, then the requisite substantial identity of

facts or participants is not present." Marionneaux at 1249.

49. Applying the standards outlined above, the Government's indictment joining the alleged

three home invasion robberies is improper as a matter of law, therefore, it is respectfully submitted that

Counts I and II should be severed from the instant indictment.  As discussed above these three incidents

are separate and distinct offenses each should be tried separate and apart form each the other.

**V. SEVERANCE PURSUANT TO RULE 14**

50.  In the event this Court finds that there is no misjoinder of the defendants under Rule

8(a)or (b), then it is respectfully submitted that joinder is prejudicial under Federal Rule of Criminal

Procedure 14.

51.  Rule 14 of the Fed. R. Crim. Proc. provides that if it appears that a defendant is

prejudiced by a joinder of the defendants, the court may order a severance. Fed. R. Crim. 14; Zafiro v.

United States 113 S. Ct. 933, 937 (1993).        Thus, even if the defendants are properly joined under Rules

8(a) or (b), the defendant is still entitled to severance if he can show specific and compelling prejudice

due to the joinder. United States v. Avery, 760 F.2d 1219, 1222 (11th Cir. 1985); United States v. Sotomayer, 592 F.2d 1219 (2nd. Cir. 1979).

52. In United States v. Persico, 621 F.Supp. 842 (S.D.N.Y. 1985), the court, in reviewing a Rule 14 motion made by the defendants therein, articulated three purposes served by a joint trial which rationalize the presumption in favor of such trials. Not a single purpose enunciated in Persico which would warrant a joint trial is remotely satisfied in the case at hand; (i) a joint trial permits the jury to see a comprehensive presentation of the entire enterprise and the role played by the defendant; (ii) a joint trial prevents the delay associated with separate, successive trials; and (iii) the safety of the witnesses must be considered.

53. Concerning point (i) clearly the Indictment does not establish a broad enterprise in which the defendant's role need be set forth. As described above the Indictment charges the defendant with participating in a single criminal episode completely unrelated to the other four criminal episodes alleged in the Indictment, save the defendant MELICHAREK. Count III -VII allege three separate gunpoint home invasion robberies all committed within a succinct one month period of time, October 2003, more than a year prior to the conduct charged against IUNI.

54. The prejudice engendered to IUNI by presenting testimony concerning three gun point home invasion robberies to a jury which must consider whether the government has demonstrated in the charged extortion that IUNI or his co-conspirators made viable threats to the victim will be overwhelming. There is no possible limiting instruction the Court could provide to the jury which could alleviate the effect upon the jury of evidence concerning prior armed instances of violence by the defendant MELICHAREK in determining whether the government has proven a viable threat of violence as it relates to the charge of extortion for which IUNI is charged. The prejudice is further enhanced by the fact that

12

IUNI is not charged with use of a firearm in furtherance of the extortion, the defense is unaware of any allegation that the victim of the extortion was ever threatened with or even observed a weapon. In sum the prejudicial effect upon IUNI will be both overwhelming and incurable.

55. As to point (ii),MICHAEL IUNI is quite prepared to accept the delay occasioned by successive trials to facilitate his acquiring a trial that is not poisoned by the intentional prejudicial spillover that will occur were the matter to proceed to trial pursuant to the instant indictment. As presently constituted evidence concerning four unrelated offenses with different witnesses will appear and testify against the defendant. In addition the jury will hear testimony concerning allegations of firearms use, three home invasions in suburban neighborhoods by MELICHAREK alleged to be his accomplice . The prejudice occasioned by such evidence is overwhelming. Moreover, there is no similarity in witnesses. except for a government's informant who made a single substantive recording of the defendant.

56. The defendant is in home confinement. He has no ability to potentially reach any proposed government witness and adequate safeguards have already been put into place by the government to protect its cooperating witness. Accordingly, witness safety is not a factor to be considered herein.

57. The cumulative prejudicial effect that IUNI would suffer if tried jointly with the co-defendants who are alleged to have participated in the five unrelated criminal episodes would indeed become so unfairly prejudicial that severance is clearly warranted.

58. The Government, by presenting to the jury evidence of the conduct of others not related to the defendant, is likely to create a prejudicial spillover effect which may preclude the fact finder from conducting the very specific analysis it would be required to do, that is, determine who is in fact culpable.

59. The joinder of all Counts may relieve the Federal Government the cost of conducting an additional trial, however, it will be had at the expense of MICHAEL IUNI's constitutional rights. After

13

objectively weighing the possible prejudice against the interests of the judicial economy were the extortion and home invasion robberies tried together, it is evident that Counts I and II and the remaining Counts should be severed from the Indictment, and a separate trial should be granted thereon.  With that in mind, the defendant hereby moves this Court for severance of Counts I and II from the remaining counts of the Indictment and request a separate trial upon Counts I and II, for the reasons set forth herein.

### VI. DISMISSAL OF COUNTS I(a) and III  DUE TO LACK OF JURISDICTION PURSUANT TO U. S.  v. LOPEZ

60.  The defendant MICHAEL IUNI moves to dismiss Counts i and II of the Indictment pursuant to United States v. Lopez, 115 S. Ct. 1624 (1995), in that the Indictment is factually insufficient as it relates to the charges contained within said counts to support a finding that the extortion of "the owner of a business located in Manhattan" (Indict PARA 5-6) obstructed delayed or affected commerce or the movement of any article or commodity in commerce, an essential element of federal criminal jurisdiction.

61. It is the defendant's position that the allegation that an owner of some unknown business establishment was extorted by the defendant is jurisdictionally defective within the meaning of Lopez, supra.  The nature of the business is unknown, it is not known if the extortion related to the business and it is not known if the extorted property were intended to be derived from the business.

62.  In United States v. Lopez, supra, the Supreme Court enumerated three categories of activity which Congress could regulate under the commerce clause:

> (1) the channels of interstate commerce; (2) the instrumentalities
> of interstate commerce, or persons or things in interstate
> commerce; and (3) activities which have "a substantial relation
> to interstate commerce... i.e. those activities that substantially
> effect interstate commerce. Lopez, 115 S. Ct. At 1629-30.

63  Criminal acts directed towards individuals and small business entities may satisfy  the

14

"effect upon interstate commerce" requirement of section 1951 only if:

> (1) the acts deplete the assets of an individual who is directly
> and customarily engaged in interstate commerce; (2) if the act
> causes or creates the likelihood that the individual will deplete
> the assets of an entity engaged in interstate commerce or (3)
> if the number of individuals victimized or the sum at stake is
> so large that there will be some cumulative effect upon interstate
> commerce" United States v. Mattson, 671 F.2d 1020, 1023 (7th Cir.
> 1982).

64. If the extortion of an individual who owns a business, without a showing of a nexus

between the extortion and the business and/or the extortion of a small retail establishment were found to

affect interstate commerce because of the real or perceived disruption of the individual's business, the

reach of 18 U.S.C. 1951(a) would be ubiquitous, and any extortion would arguably affect interstate

commerce. A finding of the requisite nexus herein would be stark conflict with the principles of

federalism, with routine police powers reserved to the states. The Hobbs Act is intended to reach only

certain activities that hamper legitimate interstate, recognizing that states are best equipped to enforce the

general criminal laws. See United States v. Collins, 40 F.3d 95 (5th Cir. 1994), United States v. Quigley,

53 F.3d 909 (8th Cir. 1995).

65. Tracing the tortuous history of the Supreme Court's Commerce Clause jurisprudence,

former Chief Justice Rehnquist noted that "the scope of interstate commerce power must be considered

in light of our dual system of government and may not be extended so as to embrace effects upon

interstate commerce so indirect and remote that to embrace them, in our view of complex society would,

effectually, obliterate the distinction between what is national and what is local and create a completely

centralized government." Lopez, supra. Noting that the court's case law has been somewhat inconsistent

with respect to the requirement that an effect on interstate commerce be "substantial" to fall within the

purview of the commerce clause, Justice Rehnquist reiterated that such is an essential part of the equation.

15

66.  While many federal regulatory statutes governing essentially local activities have withstood commerce clause analysis only when the conduct they regulate was viewed in the aggregate (See <u>Wickard</u> v. <u>Filburn</u>, 317 U.S. 111), the activities so regulated were themselves commercial in nature. In contrast, 18 U.S.C. 1951(a), the Hobbs Act is a criminal statute that is not an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity is regulated.

67.  In <u>United States</u> v. <u>Collins</u>, 40 F.3d 95 (5th Cir, 1995), the defendant was charged pursuant to the Hobbs act with two robberies; (I)  the gunpoint robbery of a Denny's Restaurant and (ii) the gunpoint robbery of outside the home of an individual, who was employed by a large national computer company.  The individual was robbed of cash, jewelry a cell phone as his car.  The fact did fall within the purview of the car jacking statute at the time.  On appeal, Collins attacked the jurisdictional basis for his robberies.

68.  In analyzing this challenge the court stated:

> In this case the government showed neither a robbery of a business nor an actual or potential direct effect on a business caused by the robbery of an individual directly engaged in interstate commerce, or the robbery of so many individuals or of so great a sum that interstate commerce realistically would be affected.  Rather, the evidence establishes that Wynn  was an individual whose only connection with interstate commerce was his employment by a business engaged in interstate commerce....

> A finding of the requisite nexus herein would be stark conflict with the principles of federalism, with routine police powers reserved to the states.  The Hobbs Act is intended to reach only certain activities that hamper legitimate interstate, recognizing that states are best equipped to enforce the general criminal laws.

<u>Collins,</u> <u>supra</u>, p.100-101.

16

69. That fact is made particularly clear herein. As stated above we do not know if the individual who owned the business was extorted in relation to his business; what business he engaged in, what effect payment of the demanded property would have upon the business or whether payment were to be derived from the business.

70. Accordingly, it is submitted that the government fails to allege in the Indictment facts sufficient as they relate to Counts I and II to sustain jurisdiction in that the indictment fails to allege a sufficient connection to interstate commerce and accordingly must be dismissed for lack of jurisdiction.

## VII.  PURSUANT TO F.R.C.P. 12 STRIKING SURPLUSAGE FROM THE INDICTMENT

71. Count I contains a three paragraph "Background" and "Defendants section. The three paragraphs allege in sum and substance that the defendants MELICHAREK, IUNI and NICOSIA were members of the Genovese Organized Crime Family. In addition Paragraph 4 alleges that the defendants "through their positions as members or associates in the Genovese Organized Crime Family.."conspired ... "to commit extortion... in violation of *18 U.S.C. 1951(b)(3)*.

72. The allegation that IUNI was a member of organized crime and the boilerplate recitals concerning the structure of an organized crime family are irrelevant and highly prejudicial to the charged offense. IUNI is charged with a violation of 18 U.S.C. 1951(b(2). Unlike a violation of 18 U.S.C. 1959 (Act of Violence in Aide of Racketeering) or 18 U.S.C. 1962 (RICO), it is not an element of 18 U.S.C. 1951 that the offense be committed to preserve or increase an individual's status in a criminal enterprise or that the offense was committed in furtherance of the enterprise. Therefore, it is surplusage of a highly prejudicial nature to include within the body of the Indictment the allegations that the defendant was a member of organized crime or that the offense was committed "through their positions as members or

17

associates in the Genovese Organized Crime Family.." (Indictment para 4 and 6).

73. In <u>United States v. Payden</u>, 613 F.Supp. 800, 823-24 (S.D.N.Y. 1985) the court stated when striking the alias contained in the caption of the indictment that the needless use of alias is prejudicial and is almost always irrelevant. Similarly allegations that a defendant is a member of organized crime or "through their positions as members or associates in the Genovese Organized Crime Family committed the offense is likewise prejudicial and irrelevant.

74. There does not appear to be any probative reason to include described surplusage for any relevant purpose.

75. Accordingly, it is respectfully requested that Paragraphs 1-3, that portion of Paragraphs 4 and 6 which read "through their positions as members of associates of the Genovese Organized Crime Family of La Cosa Nostra  be stricken from the Indictment. The background information alleged is not the element of any offense and is extraordinarily prejudicial. Applying  a Federal  Rule of Evidence 403 analysis such language should be stricken from the Indictment due to the fact that its prejudicial effect outweighs any potential probative value.

## VIII. DEMAND FOR DISCLOSURE OF EVIDENCE OF UNCHARGED CRIMES WHICH THE GOVERNMENT SEEKS TO INTRODUCE INTO EVIDENCE PURSUANT TO FEDERAL RULES OF EVIDENCE 404(b),  608 OR 609.

76. In accordance with Rule 404(b) of the Federal Rules of Evidence and the constitutional requirements espoused in <u>U.S. v. Baum</u>, 482 F.2d 1325 (2nd Cir. 1973); <u>U.S. v. Davidoff</u>, 845 F.2d 1151 (2nd Cir. 1988); <u>U.S. v. Brennan</u>, 798 F.2d 581 (2nd Cir. 1986), <u>Huddleston v. U. S.</u>, 485 U.S. 681 (1988); <u>U.S. v. Gilan</u>, 967 F.2d 772 (2nd Cir. 1992), for the purpose of asking the government to disclose to the defendant any and all acts which the government would seek to introduce against the defendant in such sufficient and reasonable time that the defendant may make a motion pursuant to Rules 403 and

404(b), to preclude introduction of such evidence.

## IX. DISCOVERY AND BRADY DEMANDS

77.  In accordance with Fed. R. Crim. Pro. 16 and the constitutional requirements espoused in

Kyles v. Whitley,   U.S.   ; 115 S.Ct. 1555 (1995), U.S. v. Bagley, 473 U.S. 667 (1985), U.S. v. Agurs,

427 U.S. 97 (1976), Giglio v. U.S., 405 U.S. 150 (1972), Brady v. Maryland, 373 U.S. 83 (1963), and their

progeny for the purpose of asking the government to furnish or permit discovery, inspection and the right

to copy specific items.

78.  The following items are requested as previously demanded by counsel for JOHN

MELICHAREK by letter dated January 8, 2008 (See Exhibit "C"):

**1.  With respect to Count I and II of the Indictment-**

1.  Identify each and every extortionate act that the government claims the defendant Iuni committed.

    a.  For each extortionate act:

        i. Identify each victim whom Iuni was alleged to have "induced by the wrongful use of actual and threatened force, violence and fear," or otherwise allegedly exercised extortionate conduct towards.
        ii. the exact manner in which each extortionate act was allegedly committed
        iii. the date and time the activity took place
        iv. the location where the activity took place
        v. who, other than Iuni threatened force, violence and fear
        vi. who other than Iuni used actual violence and force
        vii. each victim to whom threats of force, violence and fear were made by persons other than Iuni
        viii each victim against whom actual force and violence were made by persons other than Iuni
        ix. identify who participated in the activity, including but not limited to unindicted co-conspirators
        x.  state whether it is alleged that Iuni was aware of the particular threats or acts of actual or threatened force, violence or fear

2.  Identify specifically what "money or property" was obtained by Iuni

    a. Identify from whom defendant obtained the money and property
    b. Identify the date, time and place defendant obtained money and property

3. Identify in what way interstate commerce was obstructed, delayed and/or affected.

4. Identify each and every act in furtherance of the conspiracy to extort:

    a. Identify the date, time and place of each act
    b. Identify who participated in the activity

5. Identify "elsewhere" as that term is use din these paragraphs

6. Identify the "others" whose names are known to the Grand Jury.

## X. FOR LEAVE TO JOIN IN ALL RELEVANT MOTIONS MADE BY ANY CO-DEFENDANTS HEREIN.

## XI. FOR SUCH FURTHER RELIEF AS THE COURT DEEMS FAIR AND APPROPRIATE.

79. On the basis of the foregoing facts, and for the reasons set advanced herein, we submit that we are entitled to the relief requested in the attached Notice of Motion.

WHEREFORE, we respectfully request that the Court grant the relief requested in the present motions, and that the Court grant such other and further relief as it may deem just and proper.

Dated: Lake Success, New York
      January 30, 2008

                            ALAN M. NELSON, ESQ.

EXHIBIT "A"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                              :
UNITED STATES OF AMERICA,                     :
                                              :
              - v. -                          :        SEALED INDICTMENT
                                              :
JOHN MELICHAREK,                              :        S1 07 Cr. 907 (SAS)
        a/k/a "Rocky,"                        :
MICHAEL IUNI,                                 :
DOMINICK MEMOLI,                              :
        a/k/a "Shakes,"                       :
ANGELO NICOSIA,                               :
LOUIS PIPOLO,                                 :
DARDIAN CELAJ,                                :
        a/k/a "Danny,"                        :
ENED GJELAJ,                                  :
        a/k/a "Neddy," and                    :
GJELOSH KRASNIQI,                             :
        a/k/a "Jimmy,"                        :
                                              :
              Defendants.                     :
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

                          COUNT ONE
                    (Extortion Conspiracy)

              The Grand Jury charges:

                          Background

        1.    At all times relevant to this Indictment, JOHN

MELICHAREK, a/k/a "Rocky," MICHAEL IUNI, and ANGELO NICOSIA, the

defendants, and others known and unknown, were members and

associates of the Genovese Organized Crime Family, which was an

organized criminal group based in New York City that operated in

the Southern District of New York and elsewhere.  The Genovese

Organized Crime Family was part of a widespread criminal

organization known by various names, including the "Mafia" and

"La Cosa Nostra" ("LCN"), which operated through entities known as "Families."

2.   The Genovese Organized Crime Family operated through groups of individuals known as "crews" and "regimes," most of which were based in New York City and the surrounding areas.  Each "crew" had as its leader a person known as a "Caporegime," "Capo," or "Captain," and consisted of "made" members, sometimes known as "Soldiers," "wiseguys," "friends of ours," and "good fellows."  Soldiers were aided in their criminal endeavors by other trusted individuals, known as "associates," who sometimes were referred to as "connected" or identified as "with" a Soldier.  Associates participated in the various activities of the crew and its members.

<u>The Defendants</u>

3.   At all times relevant to this Indictment, JOHN MELICHAREK, a/k/a "Rocky," MICHAEL IUNI, and ANGELO NICOSIA, the defendants, were associates of the Genovese Organized Crime Family.

<u>The Violation</u>

4.   From in or about 2004, up to and including in or about February 2005, in the Southern District of New York and elsewhere, JOHN MELICHAREK, a/k/a "Rocky," MICHAEL IUNI, and ANGELO NICOSIA, the defendants, and others known and unknown, through their positions as members or associates in the Genovese

2

Organized Crime Family of La Cosa Nostra and through other means, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), by obtaining money and property from and with the consent of other persons, to wit, the owner of a business located in Manhattan, which consent would have been and was induced by the wrongful use of actual and threatened force, violence, and fear, and thereby would and did obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3).

(Title 18, United States Code, Section 1951.)

### COUNT TWO
(Extortion)

The Grand Jury further charges:

5.      Paragraphs 1 through 3 of this Indictment are repeated, realleged, and incorporated by reference as though fully set forth herein.

6.      From in or about 2004, up to and including in or about February 2005, in the Southern District of New York and elsewhere, JOHN MELICHAREK, a/k/a "Rocky," MICHAEL IUNI, and ANGELO NICOSIA, the defendants, and others known and unknown, through their positions as a members or associates of the Genovese Organized Crime Family of La Cosa Nostra and through

3

other means, unlawfully, willfully, and knowingly did commit extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), by obtaining money and property from and with the consent of other persons, to wit, the owner of a business located in Manhattan, which consent was induced by the wrongful use of actual and threatened force, violence, and fear, and thereby did obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3).

(Title 18, United States Code, Sections 1951 and 2.)

### COUNT THREE
(Hobbs Act Robbery Conspiracy)

The Grand Jury further charges:

7. In or about September 2003, in the Southern District of New York and elsewhere, JOHN MELICHAREK, a/k/a "Rocky," DOMINICK MEMOLI, a/k/a "Shakes," DARDIAN CELAJ, a/k/a "Danny," ENED GJELAJ, a/k/a "Neddy," and GJELOSH KRASNIQI, a/k/a "Jimmy," the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, MELICHAREK, MEMOLI, CELAJ,

4

GJELAJ, and KRASNIQI agreed to break into a residence in Morris County, New Jersey, and to rob the owners and occupants of cash proceeds of a business.

(Title 18, United States Code, Section 1951.)

## COUNT FOUR
(Possession Of Firearm In Connection With Crime of Violence)

The Grand Jury further charges:

8.    On or about September 28, 2003, in the Southern District of New York and elsewhere, JOHN MELICHAREK, a/k/a "Rocky," DOMINICK MEMOLI, a/k/a "Shakes," DARDIAN CELAJ, a/k/a "Danny," ENED GJELAJ, a/k/a "Neddy," and GJELOSH KRASNIQI, a/k/a "Jimmy," the defendants, and others known and unknown, unlawfully, willfully, and knowingly used and carried a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, and possessed a firearm in furtherance of such crime of violence, during which the firearm was brandished, to wit, MELICHAREK, MEMOLI, CELAJ, GJELAJ, KRASNIQI used, carried, possessed, and brandished a firearm, in relation to and in furtherance of the crime charged in Count Three of this Indictment.

(Title 18, United States Code,
Sections 924(c)(1)(A)(i) and (ii) & 2.)

5

## COUNT FIVE
(Hobbs Act Robbery Conspiracy)

The Grand Jury further charges:

9. In or about October 2003, in the Southern District of New York and elsewhere, JOHN MELICHAREK, a/k/a "Rocky," DOMINICK MEMOLI, a/k/a "Shakes," LOUIS PIPOLO, DARDIAN CELAJ, a/k/a "Danny," ENED GJELAJ, a/k/a "Neddy," and GJELOSH KRASNIQI, a/k/a "Jimmy," the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit robbery, as that term is defined in Title 18, United States Code, Sections 1951(b)(1) and (b)(2), and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, MELICHAREK, MEMOLI, PIPOLO, CELAJ, GJELAJ, and KRASNIQI agreed to break into a residence in Orange County, New York, and to rob the owners and occupants of cash proceeds of a business.

(Title 18, United States Code, Section 1951.)

## COUNT SIX
(Hobbs Act Robbery)

The Grand Jury further charges:

10. On or about October 19, 2003, in the Southern District of New York and elsewhere, JOHN MELICHAREK, a/k/a "Rocky," DOMINICK MEMOLI, a/k/a "Shakes," LOUIS PIPOLO, DARDIAN

CELAJ, a/k/a "Danny," ENED GJELAJ, a/k/a "Neddy," and GJELOSH

KRASNIQI, a/k/a "Jimmy," the defendants, did commit and attempt

to commit robbery, as that term is defined in Title 18, United

States Code, Section 1951(b)(1), and would and did thereby

obstruct, delay, and affect commerce and the movement of articles

and commodities in commerce, as that term is defined in Title 18,

United States Code, Section 1951(b)(3), to wit, MELICHAREK,

MEMOLI, PIPOLO, CELAJ, GJELAJ, and KRASNIQI broke into a

residence in Orange County, New York, intending to rob the owners

and occupants of cash proceeds of a business.

(Title 18, United States Code, Sections 1951 and 2.)

### COUNT SEVEN
(Possession Of Firearm In Connection With Crime of Violence)

The Grand Jury further charges:

11. In or about October 2003, in the Southern District

of New York and elsewhere, JOHN MELICHAREK, a/k/a "Rocky,"

DOMINICK MEMOLI, a/k/a "Shakes," LOUIS PIPOLO, DARDIAN CELAJ,

a/k/a "Danny," ENED GJELAJ, a/k/a "Neddy," and GJELOSH KRASNIQI,

a/k/a "Jimmy," the defendants, and others known and unknown,

unlawfully, willfully, and knowingly used and carried a firearm

during and in relation to a crime of violence for which they may

be prosecuted in a court of the United States, and possessed a

firearm in furtherance of such crime of violence, to wit,

MELICHAREK, MEMOLI, PIPOLO, CELAJ, GJELAJ, and KRASNIQI, used,

carried, and possessed a firearm, in relation to and in

7

furtherance of the crimes charged in Counts Five and Six of this
Indictment.

(Title 18, United States Code,
Sections 924(c)(1)(A)(i) and (ii) & 2.)

## COUNT EIGHT
(Hobbs Act Robbery Conspiracy)

The Grand Jury further charges:

12. In or about October 2005, in the Southern District
of New York and elsewhere, JOHN MELICHAREK, a/k/a "Rocky," the
defendant, and others known and unknown, unlawfully, willfully,
and knowingly did combine, conspire, confederate, and agree
together and with each other to commit robbery, as that term is
defined in Title 18, United States Code, Sections 1951(b)(1) and
(b)(2), and did thereby obstruct, delay, and affect commerce and
the movement of articles and commodities in commerce, as that
term is defined in Title 18, United States Code, Section
1951(b)(3), to wit, MELICHAREK agreed with a co-conspirator not
named as a defendant in this Indictment to rob the owner of a
business in Manhattan.

(Title 18, United States Code, Section 1951.)

## COUNT NINE
(Conspiracy - Interstate Transportation Of Stolen Property)

The Grand Jury further charges:

13. In or about October 2005, in the Southern District
of New York and elsewhere, JOHN MELICHAREK, a/k/a "Rocky," the
defendant, and others known and unknown, unlawfully, willfully,

8

and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, to violate Section 2314 of Title 18, United States Code.

14.  It was a part and an object of the conspiracy that JOHN MELICHAREK, a/k/a "Rocky," the defendant, and others known and unknown, unlawfully, willfully, and knowingly would and did transport, transmit, and transfer in interstate commerce, goods, wares, merchandise, securities and money, of the value of $5,000 and more, knowing the same to have been stolen, converted, and taken by fraud, to wit, MELICHAREK agreed with co-conspirators not named as defendants in this indictment to transport and transfer in interstate commerce approximately $17,000 worth of gold coins that he believed to have been stolen.

### Overt Acts

15.  In furtherance of the conspiracy and to effect the illegal object thereof, the following overt act, among others, was committed in the Southern District of New York and elsewhere:

a.  On or about October 27, 2005, JOHN MELICHAREK, a/k/a "Rocky," the defendant, transported gold coins to Newburgh, New York.

(Title 18, United States Code, Section 371.)

9

## FORFEITURE ALLEGATION

16.  As the result of committing the offenses alleged
in Counts One through Eight, of this Indictment, JOHN MELICHAREK,
a/k/a "Rocky," MICHAEL IUNI, DOMINICK MEMOLI, a/k/a "Shakes,"
ANGELO NICOSIA, LOUIS PIPOLO, DARDIAN CELAJ, a/k/a "Danny," ENED
GJELAJ, a/k/a "Neddy," and GJELOSH KRASNIQI, a/k/a "Jimmy," the
defendants, shall forfeit to the United States pursuant to 18
U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, all property, real
and personal, that constitutes or is derived from proceeds
traceable to the violations of 18 U.S.C. § 1951, including but
not limited to the following:  A sum of money equal to
approximately 1,000,000 in United States currency, representing
the amount of proceeds obtained as a result of the foregoing
offenses, for which the defendants are jointly and severally
liable.

### Substitute Asset Provision

17.  If any of the property described above as being
subject to forfeiture, as a result of any act or omission of the
defendant(s)-

  a.  cannot be located upon the exercise of
  due diligence;
  b.  has been transferred or sold to, or
  deposited with, a third party;

10

    c.  has been placed beyond the jurisdiction

of the court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property

which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 21,

United States Code, Section 853(p), to seek forfeiture of any

other property of the defendants up to the value of the

forfeitable property.

      (Title 18, United States Code, Sections 981 and
      Title 28, United States Code, Section 2461(c)).


_____          _____
FOREPERSON                         MICHAEL J. GARCIA
                                   United States Attorney


11

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

JOHN MELICHAREK, a/k/a "Rocky,"
MICHAEL IUNI,
DOMINICK MEMOLI, a/k/a "Shakes,"
ANGELO NICOSIA,
LOUIS PIPOLO,
DARDIAN CELAJ, a/k/a "Danny,"
ENED GJELAJ, a/k/a "Neddy," and
GJELOSH KRASNIQI, a/k/a "Jimmy,"

Defendants.

### SEALED INDICTMENT

S1 07 Cr. 907 (SAS)

(Title 18, United States Code, Sections
1951, 924(c), 371.)

MICHAEL J. GARCIA
United States Attorney.

A TRUE BILL

Foreperson.

EXHIBIT "B"



EXHIBIT "C"

Law Offices

# Barry Levin

Suite 333
600 Old Country Road
Garden City, New York 11530
----
(516) 222-4500
FACSIMILE (516) 228-8120

BARRY LEVIN
----------
JEANNIE L. BERGSTEN

WRITER'S DIRECT LINE
--------
(516) 222- 4502

January 8, 2008

AUSA Elie Honig
AUSA Benjamin Gruenstein
United States Attorney's Office
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007-1312

**Re:    _United States v. John Melicharek, 07-Cr.-907 (S-1)_**

Dear AUSA Honig and Gruenstein,

As one of the attorneys for the defendant John Melicharek, I write this letter pursuant to Rules 7 and 16 of the Federal Rules of Criminal Procedure in lieu of a formal motion, which might unnecessarily burden the Court. In the event of a disagreement between us as to whether the defendant is entitled to a particular item, we can ask the Court to resolve the conflict. Your office is, of course, under a continuing duty to disclose <u>Brady</u> and Rule 16 materials as you become aware of them.

## A. <u>Definitions</u>

Discovery and inspection of the items described below is both reasonable and necessary to the preparation of the defense. Our request for discovery and inspection relates to items in the possession, custody, or control of the United States Attorney as well as all federal, state and city agencies or governmental entities over which it has sufficient control or liaison to obtain access to materials possessed by such agency or entity. With respect to those items which we request, if the United States Attorney does not have them in its possession, we ask for a statement to the effect that such items do not exist or are not in the United States Attorney's possession. If the United States Attorney is aware that a requested item exists but does not have it in its possession, then we request that the United States Attorney disclose the whereabouts of the item. As used herein, the term "document" means any tangible thing containing, reflecting or

statement made by any defendant inculpating any other defendant, the use of which as evidence would raise Bruton issues.

43.    State whether any witness or prospective witness was hypnotized.  If so, describe the circumstances surrounding the hypnosis and provide copies of the video and/or tape recordings used to memorialize the hypnotic procedure.

44.    The government is requested to produce all correspondence and memoranda of agencies and organizations that participated in the investigation resulting in the instant indictment, to the extent that such correspondence and memoranda reflect non-privileged factual matter and witness statements.  It is understood that such material will be edited/redacted to protect matter privileged from discovery.

## G. Bill of Particulars

We request a bill of particulars in connection with the above-referenced case.  This request for a bill of particulars does not seek theories of the prosecution.  Nor does it seek the government's evidence.  Rather, these requests simply try to isolate each and every criminal or wrongful act, which will need to be defended against at trial.  Such notice is consistent with Second Circuit law.  See United States v. Davidoff, 845 F.2d 1151, 1154 (2d Cir. 1988); United States v. Bortnovsky, 820 F.2d 572, 572-75 (2d Cir. 1987) (per curiam).

Furthermore, it is respectfully requested that the government identify each and every victim of the alleged extortions contained in Counts One and Two of the Indictment. See, United States v. Abelis, 146 F.3d 73, 82 (2d Cir. 1998); United States v. Aliperti 867 F.Supp 142, 149 (E.D.N.Y. 1994); United States v. Lino, 2001 WL 8356 (S.D.N.Y.)

Moreover, it is requested that the government identify each and every unindicted co-conspirator set forth in each count, including but not limited to those referred to in the instant Indictment as "others". See, United States v. Nachamie, 91 F.supp.2d 573; United States v. Faille, 1993 WL 547419; United States v. Feola, 651 F.Supp. 1068 (S.D.N.Y. 1987)

## Requests With Respect To Count One - Extortion Conspiracy
## ¶¶ 1 through 4

1.    Identify each and every extortionate act that the government claims the defendant Melicharek committed.

    a.    For each extortionate act:

        i.    Identify each victim whom the defendant Melicharek was

        a.      Identify the date, time and place of each act.

        b.      Identify who participated in the activity

6.      Identify "elsewhere" as that term is used in these paragraphs

7.      Identify the "others" whose names are known to the Grand Jury.

## Requests With Respect To Count Two - Extortion ¶¶ 5 and 6

1.      Identify each and every extortionate act that the government claims the defendant Melicharek committed.

        a.      For each extortionate act:

                i.      Identify each victim whom the defendant Melicharek was alleged to have "induced by the wrongful use of actual and threatened force, violence and fear," or otherwise allegedly exercised extortionate conduct towards.

                ii.      the exact manner in which each extortionate act was allegedly committed

                iii.      the date and time of the activity

                iv.      the location where the activity took place

                v.      who, other than defendant Melicharek threatened force, violence and fear

                vi.      who, other than defendant Melicharek used actual violence and force

                vii.      each victim to whom threats of force, violence and fear were made by persons other than defendant Melicharek

                viii.      each victim against whom actual force and violence were made by persons other than defendant Melicharek

                ix.      Identify who participated in the activity, including but not limited to all unindicted coconspirators

          x.      State whether it is alleged that defendant Melicharek was aware of the particular threats or acts of actual and threatened force, violence and fear.

2.     Identify specifically what "money and property" was obtained by defendant Melicharek

     a.     Identify from whom defendant obtained money and property.

     b.     Identify the date, time and place defendant obtained money and property.

3.     Identify in what way interstate commerce was obstructed, delayed and/or affected.

4.     Identify "elsewhere" as that term is used in these paragraphs.

5.     Identify the "others" whose names are known to the Grand Jury.

## Requests With Respect To Count Three – Hobbs Act Robbery Conspiracy ¶ 7

1.     Identity each act allegedly committed by the defendant Melicharek in furtherance of the conspiracy to "break into a residence in Morris County, New Jersey and to rob the owners and occupants of cash proceeds of a business."

     a.     For each act allegedly committed in furtherance of the alleged conspiracy:

          i.      Identify each victim whom the defendant Melicharek was alleged to have conspired to rob.

          ii.     Specify the exact manner in which each act in furtherance of the conspiracy was allegedly committed

          iii.    Specify the date and time of the activity

          iv.    Specify the location where the activity took place

          v.     Identify who, other than defendant Melicharek, participated in the conspiracy, including but not limited to all unindicted coconspirators

          vi.    State whether it is alleged that defendant Melicharek was aware of the alleged conspiracy.

Alan M. Nelson, Esq. (AMN 3891)
3000 Marcus Avenue, Suite 1E5
Lake Success, New York 11042
(516)328-6200

Attorney for Defendant MICHAEL IUNI
**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------X
**UNITED STATES OF AMERICA,**

     **-v-**

**JOHN MELICHAREK,**
    **a/k/a "Rocky,"**
**MICHAEL IUNI,**
**DOMINIC MEMOLI,**
    **a/k/a "Shakes,"**
**ANGELO NICOSIA,**
**LOUIS PIPOLO,**
**DARDIAN CELAJ,**
    **a/k/a "Danny,"**
**ENED GJELAJ,**
    **a/k/a "Neddy,"and**
**GJELOSH KRASNIQI,**
    **a/k/a "Jimmy",**

                   **Defendants.**
-----------------------------------------------------X

**S1 07 CR 907 (SAS)**

**CERTIFICATE OF SERVICE**

STATE OF NEW YORK )
                )
COUNTY OF NASSAU )

     I, ALAN M. NELSON, an attorney duly admitted to practice before the courts of the

State of New York , hereby certify that on the 30$^{0h}$ day of January 2008 I caused the foregoing

Affidavit in Support of Motion to Suppress on behalf of the Defendant

MICHAEL IUNI  in the above referenced matter to be served upon by causing a true copy

thereof to be served by depositing a true copy thereof enclosed in a post-paid wrapper, in an

official depository under the exclusive care and custody of the U.S. Postal Service within New

York State, addressed to the following person at the address set forth after the name and

electronically filed with he Clerk of Court of the Southern District of New York:

TO:   Hon. Shira A. Scheindlin (ECF and Federal Express)
      United States Courthouse
      Southern District of New York
      500 Pearl Street
      New York, New York 10007

      United States Attorney's Office (ECF and Federal Express)
      Southern District of New York
      One St. Andrew's Plaza
      New York, New York 10007

      Attn: AUSA Elie Honig

      All Defense Counsel (ECF)

      Michael Iuni (U.S. Mail)

                                          Alan Nelson, Esq. (AN 3891)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
UNITED STATES OF AMERICA,

    -v-                                     S1 07 CR 907 (SAS)

JOHN MELICHAREK,
        a/k/a "Rocky,"
MICHAEL IUNI,                            NOTICE OF MOTION
DOMINIC MEMOLI,
        a/k/a "Shakes,"
ANGELO NICOSIA,
LOUIS PIPOLO,
DARDIAN CELAJ,
        a/k/a "Danny,"
ENED GJELAJ,
        a/k/a "Neddy,"and
GJELOSH KRASNIQI,
        a/k/a "Jimmy",

                    Defendants.
-----------------------------------------------------X

# NOTICE OF MOTION, AFFIDAVITS IN SUPPORT & MEMORANDUM OF LAW

## ALAN M. NELSON, ESQ.

**Attorney for Defendant**

Office and Post Office Address, Telephone

3000 Marcus Avenue
Lake Success, New York 11042
(516) 328-6200